IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| CATHLENE BREWER, JEFFREY HOPKINS, JAMES T. MAXWELL, SHERRY A. MILLER, GENA M. PARKHURST,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Civil Action No. 7:22-cv-00150-M-BM |
| LORI LYNN FRESHWATER, individually and as Executor of the Estate of Mary Freshwater,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Civil Action No. 7:22-cv-00161-M-RN |

## ORDER OF DISMISSAL

These matters come before the court on the Defendant's motions seeking dismissal of the above-captioned actions for the court's lack of subject-matter jurisdiction to hear the Plaintiffs' claims against Defendant under the Camp Lejeune Justice Act of 2022, Pub. L. No. 117-168, § 804, 136 Stat. 1802 (2022) ("CLJA" or "Act") [DE 15]. Defendant argues that the Plaintiffs have failed to exhaust administrative remedies required by the CLJA, and Plaintiffs counter that they already have exhausted under 28 U.S.C. § 2675 and need not do so again. On January 3, 2023, this court adopted the findings and analysis of an order issued by the Honorable James C. Dever III in *Fancher v. United States*, ___ F. Supp. 3d ___, No. 5:22-CV-315-D, 2022 WL 17842896

(E.D.N.C. Dec. 20, 2022), which addressed largely the same arguments presented by the parties in the above-captioned cases and, for additional reasons discussed below, informed these parties that the court lacks subject-matter jurisdiction to hear Plaintiffs' claims.[1]

The Plaintiffs here, like those in other cases before the undersigned and before other judicial officers, filed actions in this court under the CLJA immediately after the law was enacted. Plaintiffs believe they have complied with the statutory requirement to exhaust administrative remedies under § 804(h), because they have previously presented their claims for personal injury due to contaminated water at Camp Lejeune directly to the Department of the Navy and those claims were denied "finally" by 2019 and on reconsideration in August 2022.

Defendant moves for dismissal contending that, were the court to accept Plaintiffs' argument, it would effectively "nullify" the administrative exhaustion requirement by failing to permit the Navy to attempt to resolve claims without resort to litigation. Defendant asserts that its assessment of its liability on pre-CLJA claims (*i.e.*, claims under the Federal Tort Claims Act or "FTCA") was based entirely on jurisdictional grounds that have been abrogated by the CLJA; thus, its prior assessments did not include evaluations of the merits of each claim. Now that those defenses have been removed, Defendant asserts that it should have the opportunity to attempt to resolve the claims "under the standards of the CLJA" before litigation commences, as anticipated by the Act. Defendant notes that several of the plaintiffs who have filed litigation since the enactment of the CLJA have also filed "new" claims with the Navy.

Plaintiffs counter that the plain text of § 804, including that the Act applies not to "new" but to "preexisting" claims, supports their position. Plaintiffs further assert that the structure and

---

[1] In addition to legal and factual findings made here, the court gratefully incorporates those cogently stated by Judge Dever in his opinion. *See Fancher*, 2022 WL 17842896.

a broad construction of the Act demonstrate that they need not re-file their administrative claims with the Navy. Plaintiffs argue that Defendant fails to rebut the plain text of the CLJA, which does not "disqualify pre-CLJA exhausted claims." Plaintiffs also contend they will suffer prejudice in an "additional" six-month delay in commencing litigation against Defendant. Further, Plaintiffs argue that Defendant's choice to rely on jurisdictional defenses when their administrative claims were previously presented should not excuse Defendant from conducting an adequate investigation into the merits of the claims at that time, as contemplated by the FTCA. Finally, Plaintiffs assert that Defendant's statistics regarding claims filed since enactment of the CLJA "have no bearing whatsoever on the proper interpretation of the CLJA."[2]

The court finds Plaintiffs have failed to exhaust administrative remedies under the CLJA; therefore, the court lacks subject-matter jurisdiction in this case and Plaintiffs' claims must be dismissed without prejudice. The CLJA requires exhaustion through the claims procedure outlined in the FTCA, 28 U.S.C. § 2675(a), and the requirement to file such administrative claim "is jurisdictional and may not be waived." *Penn Millers Ins. Co. v. United States*, 472 F. Supp. 2d 705, 710 (E.D.N.C. 2007) (citing *Plyler v. United States*, 900 F.2d 41, 42 (4th Cir. 1990) and *Kokotis v. U.S. Postal Serv.*, 223 F.3d 275, 278 (4th Cir. 2000)). Simply put, the CLJA did not exist in previous years when Plaintiffs filed their claims and, thus, the Navy could not have disposed of Plaintiffs' CLJA claims before they brought them in this litigation. *See* CLJA, § 804(h).

---

[2] The court notes that the plaintiffs in all CLJA cases currently assigned to the undersigned judicial officer made essentially the same or very similar arguments in support of their positions on this issue. Likewise, Plaintiff Freshwater asserted the same arguments, as well as an additional argument concerning application of the "same operative facts" test. *See* DE 20 at 16-18. For the reasons stated herein, the court finds that application of such test to a new CLJA claim misplaced.

3

Whether a plaintiff must file an administrative claim with the Navy—regardless of whether the plaintiff has previously exhausted the administrative process for an FTCA claim—before filing a lawsuit under the CLJA is a question of statutory interpretation. As the Fourth Circuit instructs, "[o]ur objective in all cases of statutory interpretation is 'to ascertain and implement the intent of Congress.'" *Broughman v. Carver*, 624 F.3d 670, 674–75 (4th Cir. 2010) (quoting *Scott v. United States*, 328 F.3d 132, 138 (4th Cir. 2003)). "Because Congress' intent 'can most easily be seen in the text of the Acts it promulgates,' we begin with an examination of the statute's 'plain text.'" *Id.* (quoting *United States v. Wills*, 234 F.3d 174, 178 (4th Cir. 2000)).

Plaintiffs' contention that the plain text of the Act "does not disqualify pre-CLJA exhausted claims" is unavailing. It is also true that the plain text of the Act does not expressly *permit* claims previously exhausted under the FTCA to satisfy § 804(h). Rather, the statute plainly instructs individuals that they may not file actions under the CLJA until they have complied with Section 2675, which requires that "the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied . . . ." 28 U.S.C. § 2675(a). No party disputes that claims under the CLJA did not accrue until the Act became law on August 10, 2022. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007). The court finds that the plain language of § 804(h) requires a CLJA claimant—whose claim did not exist until August 2022—to first present his or her claim to the Navy before filing an action in federal court.

Further, the court is not persuaded by Plaintiff's attempt to distinguish a "claim" from a "cause of action" in arguing that the CLJA created a new cause of action, but not a new claim that must be "re-exhausted." In referencing a "claim" under the CLJA and FTCA, Plaintiffs conflate the terms "legal claim" and "administrative claim" and argue that because an administrative claim need only include a statement of facts and assert no legal theory(ies), they have complied with the

4

exhaustion requirement by presenting the same facts to the Navy underlying their current "causes of action" under the CLJA. However, whether it is deemed a "claim" or a "cause of action," the CLJA has created a new basis on which Plaintiffs may sue for recovery of certain harms and requires that, *before* they file such suits, they must present their claims to the Navy. It is undisputed here they did not do so.

Equally unpersuasive is the Plaintiffs' argument that "[t]he evident purpose of the two-year alternative was to ensure that CLJA actions based on claims that were already exhausted years ago—and so could not meet the six-month bar—could be filed." Plaintiffs cite no legal support for this theory. Notably, the two-year limitation is not presented in the Act as "*the* alternative"; rather, the CLJA provides, in pertinent part:

> (j) Applicability; Period For Filing.—
>
> \*\*\*
>
> (2) STATUTE OF LIMITATIONS.—A claim in an action under this section may not be commenced after the later of—
>
> > (A) the date that is two years after the date of enactment of this Act; or
> >
> > (B) the date that is 180 days after the date on which the claim is denied under section 2675 of title 28, United States Code.
>
> \*\*\*

CLJA § 804(j). Congress' choice to include the two-year limitation period in addition to the exhaustion requirement is not "puzzling" as Plaintiffs suggest: one may reasonably infer that the two-year limitation was set to allow sufficient time for claimants, both represented and unrepresented, to proceed through the administrative process and adequately prepare for litigation, and the six-month alternative was added to ensure that any claimants who file administrative claims closer to the two-year deadline might still have the ability to file a lawsuit. In cases in

5

which the Navy resolves claims in a time period shorter than anticipated, the two-year deadline also would allow an unrepresented claimant ample time to retain and "bring up to speed" an attorney for representation during litigation. Thus, it is not "evident" that the two-year limitations period in Section 804(j) was, as Plaintiffs assert, included solely to permit pre-CLJA claimants to proceed directly to litigation. Furthermore, as Judge Dever illustrates, Plaintiffs' interpretation of the CLJA would, for pre-existing claims, confine claimants solely to the two-year period since the 180-day deadline would have—for many claimants—passed long before the statute was enacted. *See Fancher*, 2022 WL 17842896, at \*6.

Finally, Plaintiffs complain they will suffer prejudice by "further delay" caused by the administrative proceeding if they are required to pursue it. While the court agrees that any unnecessary or undue delay should be avoided, Plaintiffs do not explain how the Navy's administrative process would cause such harm. The Navy concedes that, in light of several available jurisdictional defenses, it did not consider the merits of FTCA administrative claims brought in the past and "needs to investigate and evaluate claims under the standards of the CLJA" to fulfill the statutory purpose of attempting to resolve these claims before they proceed to litigation. Resp. at 7, DE 17. Importantly, while Plaintiffs criticize the Navy for its purported failure to complete merits evaluations on prior FTCA claims, Plaintiffs fail to acknowledge that, even if the Navy had completed such evaluations, they would be different than merits evaluations under the CLJA and, thus, insufficient to meet the Act's purpose.

That is, to maintain a case against the United States under the FTCA, a plaintiff must demonstrate that his action is permissible under the FTCA and satisfies the necessary elements of a tort claim cognizable under law of the state in which the action accrued. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994) (citing 28 U.S.C. § 1346(b)). For a negligence claim in North Carolina,

6

a plaintiff must show by a preponderance of the evidence that the defendant owed him a duty of care, the defendant breached that duty, and the defendant's breach was the actual and proximate cause of the plaintiff's injury. *Lumsden v. United States*, 555 F. Supp. 2d 580, 588 (E.D.N.C. 2008) (citing *Hall v. Toreros II, Inc.*, 176 N.C. App. 309, 313, 626 S.E.2d 861, 865 (2006), *aff'd, ordered not precedential*, 363 N.C. 114, 678 S.E.2d 656 (2009)). Conversely, to establish a claim under the CLJA, the plaintiff need show only that a relationship between exposure to the water at Camp Lejeune and the stated harm is "sufficient to conclude that a causal relationship exists" or "sufficient to conclude that a causal relationship is at least as likely as not." CLJA § 804(c). Among other things, the Act establishes new forms of harm that may serve as a claim, renders new classes of evidence admissible by statute, and removes the imposition of punitive damages. The legal standards of an FTCA claim are clearly different from, and stricter than, a CLJA claim; thus, claims that may not meet the FTCA's standards may, in fact, be viable under the CLJA. Accordingly, the court finds groundless any argument that a CLJA plaintiff's exhaustion of a prior FTCA claim is sufficient to satisfy § 804(h) of the CLJA.

In sum, Plaintiffs have failed to demonstrate they have exhausted the administrative remedy required in Section 804(h) of the CLJA and, therefore, the court lacks subject-matter jurisdiction over Plaintiffs' CLJA claims. Defendant's Motions to Dismiss [DE 15] are GRANTED and Plaintiffs' actions are DISMISSED WITHOUT PREJUDICE. The Clerk of the Court is directed to close these cases.

SO ORDERED this 13th day of February, 2023.

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE